**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50042 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| AMANDA RIVERS | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is an appeal filed by the defendant, Amanda Rivers. [Rec. Doc. 22]. After a bench trial before Magistrate Judge Mark Hornsby on May 18, 2006, Rivers was convicted on one count of instigating or assisting escape of an inmate and one count of instigating or assisting attempt to escape of an inmate, both in violation of 18 U.S.C. § 752. Rivers appeals her conviction solely on the basis of lack of sufficient evidence. This Court has reviewed the record and the magistrate judge's findings, and finding no error, affirms the judgment of conviction.

**BACKGROUND**

Amanda Rivers is the wife of then Ssgt. Frank Rivers. In November of 2005, Sgt. Rivers was a member of the 608 Air Communication Squadron located at Barksdale Air Force Base ("BAFB"). [Trial transcript at 4-7]. In November of 2005, Sgt. Rivers went AWOL. [Id. at 5]. He was subsequently apprehended outside a Little Rock Air Force Base. [Id.].

Amanda Rivers had taken her husband from Barksdale to obtain help for an addiction problem. [Id.]. Rivers's First Sgt., Msgt. Elizabeth B. Deneke, had been in communication with Ms. Rivers and told her to tell her husband to go to the nearest Air Force installation as soon as possible. According to Deneke, they communicated every

30 minutes until the point when Rivers was apprehended at Little Rock Air Force Base. [Id. at 4-5].

Deneke traveled with Msgt. Bryant to Little Rock and brought Frank Rivers back to BAFB. [Id. at 6]. Rivers was taken to the Barksdale clinic for evaluation because of the indicated need for help for his drug addiction, as had been related to Deneke by Amanda Rivers. [Id.]. Rivers was also given a complete physical, subsequently transported to the V.A. Hospital in Shreveport for overnight observation and finally delivered to the confinement facility at BAFB on December 1, 2005. [Id. at 6-7].

I.      **Evidence Pertaining to Count One.**

According to Msgt. Deneke, when delivered to the confinement facility, Rivers was dressed in civilian attire, wearing tennis shoes without shoelaces. The shoelaces had been removed by the authorities. [Id. at 8]. Deneke further testified that after surrender of Frank Rivers to the confinement facility, she subsequently gave his civilian clothing to Amanda Rivers. [Id. at 9]. Included in the clothing, according to Deneke, were the shoes.[Id.]. Deneke stated the shoes were still without laces. [Id.]. Thereafter, Deneke visited Frank Rivers at the facility at least three times, finding Rivers in a battle dress uniform (BDU's) and combat boots. [Id. at 10].

On Monday, December 5, 2005, an appointment was made for Frank Rivers to meet with his attorney, Captain Frost, at 9:00 a.m. [Id. at 11]. He was escorted to the Area Defense Counsel facility by Msgt. James Wright. [Id.]. Rivers was placed in the visiting attorney's office. Amanda Rivers was also present. [Id. at 52]. Capt. Frost testified that Frank Rivers was not wearing tennis shoes at that time, and Amanda Rivers did not have any tennis shoes with her when she arrived at the ADC's office. [Id. at 57-58]. Captain Frost returned to his office, and after 15-20 minutes, came back and knocked on the

visiting attorney's office, upon opening the door found that both Rivers and his wife were gone. [Id. at 53].

The ADC's office has a door at the end of the hall that opens onto a fire escape and a wide set of stairs leading to the parking lot outside the building [Id. at 45-50; Govt. Exhibits 8-11]. While no one saw either Amanda or Frank Rivers leave, Capt. Frost immediately realized that Rivers apparently left the building and disappeared. [Id. at 12; 42]. Frank Rivers' escort testified that he was notified of the escape 30-45 minutes after arriving at the ADC's office. [Id. at 42]. By 9:00 AM, OSI Special Agent Mixon had also been notified of the escape. [Id. at 60].

Attorney Robert Goodman testified that he had met with Amanda Rivers sometime around the noon hour on December 5, 2005 at his law office on Travis Street in downtown Shreveport to discuss a pending civil matter. [Id. at 97]. Amanda's husband was not with her. [Id.]. During her meeting, representatives from BAFB appeared at Goodman's office. Amanda engaged in conversation with them outside of Mr. Goodman's hearing. [Id. at 98]. Ms. Rivers then left with these individuals. [Id. at 68].

An accident report was entered as Defense Exhibit 1 which indicates that Ms. Rivers was involved in a car accident at approximately 4:30 p.m. on December 5 in a Wal-Mart parking lot. [Id. at 102]. She then returned to Goodman's office around 5:30 p.m. in order to retrieve some documents that she had been scheduled to examine in connection with the civil matter that she had been unable to review because of her sudden departure with the Air Force representatives. [Id. at 98].

Later that day, military authorities received a tip that Frank Rivers was at an apartment complex in Bossier City near Harrah's Louisiana Downs Racetrack. [Id. at 63; 70]. He was later apprehended that evening, shortly before 8:30 p.m. [Id. at 12; 37].

When he was taken into custody, he was wearing civilian clothing, including the tennis shoes with no laces. [Id. at 8-10]. According to witnesses, these were the same shoes that had been given to Amanda Rivers when Frank Rivers was initially taken into custody. [Id. at 64; Govt. Exhibit 16]. Rivers was returned to the confinement facility. [Id. at 12-13].

## II.     Evidence Pertaining to Count Two.

Msgt. Deneke testified that she assisted in the storage of some of Frank Rivers' personal belongings which were received when he was evicted from his apartment. [Id. at 13]. Deneke then met with Amanda Rivers during the evening hours of Sunday, January 29, 2006, in order to return these items. [Id. at 14-15]. During this meeting, Amanda Rivers allegedly asked Sgt. Deneke to deliver a box of Gain Detergent and some sweat pants to her husband. [Id. at 16]. Shortly after Deneke received these items, she received a phone call which prompted her to contact Special Agent Lee Mixon. [Id. at 19]. The next morning, Deneke met with Mixon in the OSI office at BAFB. [Id. at 18]. Mixon opened the box of laundry detergent and inside found a ziploc bag containing a cell phone that was wrapped with a note and a rubber band. [Id. at 19]. A cell phone is contraband for an inmate. [Id. at 31]. The note was dated January 28, 2006 and had Amanda Rivers' name on it. [Id. at 19; 24; Govt. Exhibit 15]. The note was addressed to "Frank" and twice warned him to "Be Careful!". [Id.].

## LAW AND ANALYSIS

## I.     Standard of Review.

This Court will review Rivers' conviction for sufficiency of evidence. On appeal from a magistrate judge's judgment of conviction, "the defendant is not entitled to a trial *de novo* by a district judge." F.R.Cr.P. 58(g)(2)(D). Rather, the scope of the defendant's appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district

judge." Id. Under this standard of review, a district court will affirm a magistrate judge's findings if they are supported by substantial evidence. See U.S. v. Lee, 217 F.3d 284, 288 (5th Cir. 2000). In order to reverse the defendant's conviction, "this Court must conclude that no rational trier of fact could find substantial evidence establishing the defendant's guilt beyond a reasonable doubt." Id. The Court shall also consider all of the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the Magistrate Judge. See id.

**II.    Count One.**

Rivers argues on appeal that there was insufficient evidence to convict her of assisting or aiding the escape of her husband on December 5, 2005. Specifically, she argues that the evidence does not establish that she assisted her husband before his escape was complete and he had reached a "temporary safety." Whether the escape was complete upon the receipt of assistance governs whether the appropriate charge is assisting escape or harboring a fugitive.

The evidence introduced at trial shows that Frank and Amanda Rivers both disappeared from the Area Defense Counsel on Barksdale Air Force Base at the same time from the same room. Amanda had a car. Frank did not. Frank was captured later that day at an apartment complex near Harrah's Louisiana Downs Racetrack wearing the same shoes that had been returned to Amanda several days earlier. Based on all of the circumstances, the Magistrate Judge found that Amanda Rivers had provided her husband with clothing as part of his escape, and that he was still running from the initial pursuit at the time he was captured in that clothing.

Based on the evidence heard by the Magistrate Judge at trial, it is clear that a rational trier of fact could have concluded beyond a reasonable doubt that Rivers'

knowingly assisted her husband to escape from the Area Defense Counsel on December 5, 2005. Further, the Court is cognizant of its duty to consider all of the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the Magistrate Judge. See Lee, 217 F.3d at 288. Accordingly, the Court finds that the evidence is sufficient to sustain Rivers' conviction on Count One.

### III. Count Two.

Rivers argues on appeal that there was insufficient evidence to convict her of assisting or aiding the attempt to escape of her husband on or about January 28, 2006. Specifically, she argues that there is no evidence to infer that the cell phone hidden in the laundry detergent for her husband was to be used to effect an escape.

The evidence admitted at trial shows that Amanda Rivers had assisted her husband's previous escape. She then attempted to smuggle a cell phone to him under false pretenses and warned him to "Be Careful" twice. Under all of the circumstances, the Magistrate Judge found that Amanda Rivers wanted to further assist her husband in escaping from the facility and that the cell phone was to coordinate their additional plans. He specifically rejected the notion that the cell phone was merely to facilitate telephone communications.

Considering all of the evidence in the light most favorable to the verdict and deferring to the reasonable inferences of fact drawn by the Magistrate Judge, the Court finds that a rational trier of fact could find substantial evidence establishing Amanda Rivers' guilt beyond a reasonable doubt. Accordingly, the Court finds that the evidence is sufficient to sustain Rivers' conviction on Count Two.

## CONCLUSION

For the foregoing reasons, the Court finds that a rational trier of fact could have concluded that Amanda Rivers was guilty of assisting in the escape of her husband on December 5, 2005 and assisting in his attempt to escape on or about January 28, 2006, both as charged in the Bill of Information.

For these reasons, Amanda Rivers' conviction is **AFFIRMED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 14th day of December, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE